UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Leatherwood Scopes International, Inc.,

Plaintiff,

v.

James M. Leatherwood
d/b/a Leatherwood Optics,

Defendant.

Civ. File No. 00-817 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons that follow, the Court denies Plaintiff's Motion and grants Defendant's Motion.

**BACKGROUND**

Defendant James Leatherwood is the inventor of rifle scopes known as adjustable ranging telescopes ("ART"). These include at least three different scope models: the ART II, the ART Tel, and the ART/MPC ("MPC"). Defendant was an officer, director, and shareholder of Tri Continental Trading Corporation ("Tri Continental"), which owned Defendant's ART II and ART Tel scope business. Defendant's MPC scope was manufactured and sold by the Weaver Company.

Randy Luth ("Luth") of Defense Procurement Manufacturing Services was a major

FILED APR 24 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD APR 24 2001
DEPUTY CLERK

customer for the ART II scope. In 1995, Luth formed Plaintiff Leatherwood Scopes International, and entered into an agreement with Tri Continental to purchase the assets, technology, and goodwill related to the ART II and ART Tel scopes. Luth declined to purchase the assets, technology, and goodwill related to Defendant's MPC scope.

The agreement between the parties included a July 17, 1995, Asset Purchase Agreement, under which Tri Continental sold to Plaintiff "[t]he names 'ART II' and 'ART Tel Scopes,' commonly known as Leatherwood ART II and ART Tel Scopes," as well as "[a]ny goodwill concerning the business of manufacturing, assembling, and selling ART II and ART Tel Scopes," along with drawings and blueprints, inventory, assembly and test fixtures, and vendor and customer lists. (Klippen Decl. Ex. 2 ¶ 1.) The parties also entered into a Noncompetition Agreement whereby Defendant agreed not to manufacture, assemble, or sell "ART II and ART Tel Scopes, commonly known as Leatherwood ART II and ART Tel Scopes internationally," and not to "manufacture, assemble, or sell any products or services involving the ART II or ART Tel Scopes or otherwise solicit any such business from any current or prior customers . . . ." (Id. Ex. 3 ¶¶ 2-3.) Both Agreements were drafted by Irwin Ketroser, then counsel for Plaintiff. (Id. Ex. 1 ¶ 3.) In drafting the Agreements, Ketroser drew upon a proposal letter prepared by Defendant, in which Defendant references Plaintiff's "right to use the Leatherwood name and trademark on the ART II and the ART Tel." (Id. Ex. 7.)

After the sale, Plaintiff and Defendant continued to work together. Most notably,

Defendant helped train Plaintiff's employees in the manufacturing of the ART scopes. However, in June 1998, the relationship between the parties soured when Defendant began selling the "Leatherwood Sporter" scope through his newly formed company, Leatherwood Optics. According to Plaintiff, Defendant's use of the name Leatherwood in conjunction with the Sporter scope violated the Asset Purchase Agreement, while Defendant's sale of the Sporter scope itself violated the Noncompetition Agreement. According to Defendant, the Leatherwood Sporter is modeled after the MPC scope design, which was not purchased by Plaintiff, and is therefore outside the scope of the Noncompetition Agreement. Furthermore, Defendant denies that he sold the Leatherwood name to Plaintiff. Several fractious letters ultimately flew back and forth between the parties. Both threatened to sue, and Defendant demanded that Plaintiff stop using the Leatherwood name.[1]

On April 3, 2000, Plaintiff commenced the present lawsuit claiming that Defendant breached the Agreements and subsequently infringed its trademark rights. On May 5, 2000, Defendant filed an application to register the Leatherwood mark with the U.S. Patent & Trademark Office for use with rifle scopes and other optical equipment, based on his first use of that term in commerce in 1969. Plaintiff has filed an opposition to that application. The parties agree, however, that the Leatherwood trademark is a famous and valid common law trademark that has been used in commerce since the late 1960s. (Klippen Decl. Ex. 1 ¶ 4.)

In June 2000, Plaintiff moved for a preliminary injunction seeking to enjoin

---

[1] Despite Defendant's apparent desire to preclude Plaintiff's further use of the Leatherwood mark, Defendant did not file a counter-claim seeking such relief.

Defendant from using the Leatherwood mark in conjunction with the manufacture and sale of rifle scopes. This Court denied Plaintiff's Motion, specifically finding that there was sufficient ambiguity in the contract language to raise a question as to Plaintiff's likelihood of success on the merits. Both parties now move for summary judgment.

**DISCUSSION**

**A. Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quotation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enterprise Bank, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.

1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957.

### B. Merits

The dispositive issue in this case is whether the Asset Purchase Agreement conveyed the Leatherwood trademark to Plaintiff. If Plaintiff purchased the trademark from Defendant, Defendant was in breach of the Agreement when he began using the Leatherwood mark in connection with the sale of the Sporter scope in 1998. Neither party disputes that, at least initially, Plaintiff was authorized to use the Leatherwood name and mark. In addition, the parties stipulate that prior to entering into the Agreement, Defendant owned the common law trademark "Leatherwood." (See Klippen Decl. Ex. 1 ¶ 4.)

The Asset Purchase Agreement provides for the sale of "[t]he names 'ART II' and 'ART Tel Scopes,' commonly known as Leatherwood ART II and ART Tel Scopes" and "[a]ny goodwill concerning the business of manufacturing, assembling, and selling ART II and ART Tel Scopes." (Klippen Decl. Ex. 2 ¶ 1.) Plaintiff argues that the phrase "commonly known as Leatherwood ART II and ART Tel Scopes" expands the scope of what was expressly conveyed by the particular names specified within quotation marks in the agreement (i.e., the "ART II" and "ART Tel" names) to implicitly also include the term "Leatherwood." In addition, Plaintiff contends that because it purchased the good will

associated with the ART II and ART Tel scopes, the Leatherwood mark was impliedly purchased as well.

Defendant maintains that Plaintiff purchased only the names that appeared within quotations—that is, the names "ART Tel" and "ART II"—not the name "Leatherwood" itself. The phrase "commonly known as Leatherwood ART II and ART Tel Scopes" merely acknowledges that the ART II and ART Tel Scopes were previously long associated with Defendant. According to Defendant, Plaintiff had a revocable license to use the name Leatherwood.

As the Court noted in its Memorandum and Order denying Plaintiff's Motion for Preliminary Injunction, the Asset Purchase Agreement itself does not resolve the issue of whether Plaintiff purchased the Leatherwood mark from Defendant. Most notably, there is no express language in the contract regarding the sale of the Leatherwood mark. At the same time, there is no language indicating that the sale involved revocable rights, as Defendant argues. Given the contract's silence regarding this issue, both parties' interpretations seem plausible. The Court may therefore consider parol and extrinsic evidence to determine the parties' intent.

The parol evidence rule bars the admission of evidence of a prior or contemporaneous oral agreement when a writing is unambiguous. McCarthy's St. Louis Park Café, Inc. v. Minneapolis Baseball & Athletic Ass'n, 104 N.W.2d 895, 899 (Minn. 1960). However, where, as here, a writing is ambiguous, a court may consider evidence "to explain the sense

in which the writer understood [the language employed]." Id. In addition, "where parties to a contract have given it a practical construction by their conduct, as by acts in performance thereof, such construction may be considered by the court in determining its meaning and in ascertaining the mutual intent of the parties." Leslie v. Minneapolis Teachers Retirement Fund Ass'n, 16 N.W.2d 313, 315-16 (Minn. 1944). Therefore, in construing the Asset Purchase Agreement, the Court will consider parol and extrinsic evidence. Moreover, because the terms of the Agreement are ambiguous, the Court must construe the contract against Plaintiff, the drafter. See Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979).

The most significant parol evidence is the proposal letter submitted by Defendant and used by Plaintiff's counsel in drafting the Asset Purchase Agreements. In the letter, Defendant referenced Plaintiff's "right to use the Leatherwood name and trademark on the ART II and the ART Tel." (Klippen Decl. Ex. 7.) According to Plaintiff, this language clearly establishes Defendant's intent to irrevocably transfer the trademark to Plaintiff. The plain meaning of the language belies that interpretation. The words used do not expressly or impliedly refer to transferring or selling the trademark. To the contrary, the letter clearly indicates that Defendant intended to allow Plaintiff to "use" the trademark. Thus, Defendant's proposal letter strongly evinces Defendant's intent not to sell his trademark to Plaintiff. Indeed, the letter supports Defendant's contention that he merely allowed Plaintiff to use his name and trademark in connection with the sale of the ART scopes.

Defendant's intent not to sell his trademark is further demonstrated by his continued use of the Leatherwood mark in connection with the manufacture and sale of his leverlock scope mounts after the sale of the ART scopes to Plaintiff. (See Leatherwood Dep. at 175.) Moreover, at the time Plaintiff purchased Defendant's ART business, Plaintiff declined Defendant's offer to sell the assets and technology relating to the MPC scope. (See Luth Dep. at 35-36.) This fact directly contradicts Plaintiff's contention that Defendant sold his entire scope business to Plaintiff.

Finally, it is undisputed that Defendant deliberately did not sell Plaintiff the marking die and stamp used to imprint the Leatherwood mark on the ART scopes. (Leatherwood Dep. at 173.) The Asset Purchase Agreement, while very descriptive, does not mention these items either in specific or general terms. (See Klippen Decl. Ex. 2.) Defendant's decision to exclude these items in the sale further evinces his intent not to sell his trademark. Indeed, had he intended to sell his trademark, the marking die and stamp would doubtless have been included in the Asset Purchase Agreement.

Overall, the parol and extrinsic evidence is sufficient to establish that Defendant did not intend to sell the Leatherwood name or mark to Plaintiff. Moreover, as a practical matter, it would strain credulity to conclude that Defendant so readily and casually relinquished the use of his own name in conjunction with products he spent his entire adult life developing.

Plaintiff argues that even if not made explicit by the Asset Purchase Agreement, the

sale of the Leatherwood trademark is implied by law because "[g]oodwill and trademarks are presumed transferred with the sale of a business even though not specifically mentioned in the contract of sale." (Pl.'s Mem. in Supp. Mot. for Sum. J. at 7.) However, none of the cases cited by Plaintiff actually support such a broad proposition. See Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 557 (1908) (concluding that trade names were included in the deed of sale because the deed conveyed all "trademarks, patent rights, trade rights, good will, and all its property and assets of every name and nature"); Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 871 F.2d 697, 700 (7th Cir. 1989) ("Absent contrary evidence, a business trade name is presumed to pass to its buyer."). Nevertheless, given the conclusive evidence that Defendant did not intend to sell his trademark to Plaintiff, the Asset Purchase Agreement will not be read to impliedly include the conveyance of Defendant's trademark.

Accordingly, the Court concludes that, as a matter of law, Plaintiff's breach of contract claim fails insofar as it is based on Defendant's use of the Leatherwood mark.[2] See Leslie, 16 N.W.2d at 316 ("Where such extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear, its construction [] becomes a question of law for the Court."). In addition, because Plaintiff does not own the Leatherwood mark, Plaintiff's

---

[2] The Court acknowledges that in making such a determination, both parties will continue to operate under the name Leatherwood. According to Plaintiff, such a situation will be legally and practically untenable. However, because Defendant did not file a counter-claim seeking to preclude Plaintiff from further using the Leatherwood mark and because Plaintiff did not seek a declaration of rights under the trademark, the issue is not squarely before the Court at this time.

trademark infringement, unfair competition, deceptive trade practices, and cyber-squatting claims also fail.

Apart from Plaintiff's claims relating to the Leatherwood mark, Plaintiff also alleges that Defendant breached the Noncompetition Agreement by manufacturing and selling the Sporter scope. Unlike in the Asset Purchase Agreement, the parties made their intentions clear in the Noncompetition Agreement. The Agreement expressly provides that Defendant may not "manufacture, assemble, or sell any products or services involving the ART II or ART Tel Scopes . . . ." (Klippen Decl. Ex. 3 ¶ 3.) Therefore, if Defendant's Sporter scope is based on the ART II or ART Tel scopes, Defendant is in breach of the Noncompetition Agreement, as Plaintiff argues. If, however, the Sporter scope is based on the MPC, Defendant is not in breach of the Agreement. A review of the record reveals that the Sporter is indeed based on the MPC scope.

The MPC was manufactured and sold by the Weaver Company. It is undisputed that when the Weaver Company went out of business, Defendant purchased the MPC inventory and used that inventory to create a prototype for the Leatherwood Sporter. Although Luth makes protestations to the contrary, (see Luth Dep. at 53), there is absolutely no objective evidence that the Sporter scope is an ART II or ART Tel based scope, rather than an MPC based scope, and Plaintiff appears to concede as much in its reply brief. (See Pl.'s Reply Mem. at 4.) Accordingly, the Court concludes as a matter of law that Defendant did not breach the Noncompetition Agreement.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court denies Plaintiff's Motion and grants Defendant's Motion.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 28) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Clerk Doc. No. 31) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 20, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: APR 24 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*